## TEXAS MIDLAND R. R. v. COMBS.
### (No. 1805.)

(Court of Civil Appeals of Texas. Texarkana. May 18, 1917. Rehearing Denied June 5, 1917.)

1. APPEAL AND ERROR ⚌215(1) — RESERVATION OF EXCEPTIONS—WAIVER.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, providing that the charge shall be submitted to the respective parties or their attorneys for inspection and a reasonable time given them in which to examine it and present objections thereto, and all objections not so made and presented shall be considered as waived, and article 2061, providing that the rule of the court in the giving, refusing, or qualifying of instructions to the jury shall be regarded as approved unless excepted to as provided for in the foregoing articles, where appellant did not object to a charge on the ground of omissions he waived his right to do so on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309, 1310; Trial, Cent. Dig. § 683.]

2. RAILROADS ⚌351(6) — CROSSINGS — INSTRUCTIONS.

Where plaintiff was injured by his horses taking fright while at a railroad crossing from which the planks had been removed and near which piles of lumber and a hand car were located, the section man having told him to "come ahead," an instruction to find for plaintiff if the section man had removed some of the planks and ballast rendering the crossing dangerous and if defendant's foreman told him that he could cross and if by ordinary care the defendant's employés could have left a comparatively safe way and they failed to do so, such failure was negligence on their part, and if when plaintiff undertook to drive over the crossing his team became frightened and he was injured as alleged, was not affirmatively erroneous.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1199.]

3. DAMAGES ⚌132(7)—EXCESSIVE DAMAGES—PERSONAL INJURIES.

A verdict for $3,000 held not excessive, where a man 45 years old, while driving over a railroad crossing under repairs was injured in the kidneys and both legs, resulting in piles and Bright's disease, in consequence of which he could live but a few years.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 378.]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Henry P. Combs against the Texas Midland Railroad. Judgment for plaintiff, and defendant appeals. Affirmed.

Between 9 and 10 o'clock of the morning of April 29, 1915, appellee, while traveling in a wagon drawn by horses over a public road where it crossed appellant's track, suffered injury to his person. It appeared from the testimony that appellant's section men in repairing the track, having removed plank used in constructing the crossing over the public road, had taken the dirt from between the rails and ties, leaving holes between the ties and the space between the rails unfilled. The section men were at work at the crossing as appellee approached it. When he reached a point 60 or 90 feet

from the crossing, he stopped his team, and, being unable to see the condition of the crossing, called to the section men and asked if he "could cross all right." One of the section men replied, "Yes, come ahead," and some of the men, who, it seems, were then on the crossing, stepped to one side of it, and some to the other. "When they told me to come ahead," appellee testified:

"I just slapped my horses and started on. It was going uphill at that point. The horses went on all right. They had their heads up and were looking, and I was watching them until they got to where they were ready to step off the first rail. Then they got scared and made a lunge, and I jerked them and seesawed them to keep them from running, and then they jumped across, and that hit me in the side against the spring seat and on the right hip and jerked me in the back, and it seemed like it tore me in two in the side, and it jerked me back and forward on the seat and up and down. At the time this happened, my wagon was going across the railroad. When I got on the crossing my horses got frightened. I discovered that the planks had been taken out of the crossing and the dirt removed to some extent between the ties. I looked down. Of course, I did not have time to look down much. I was excited, my team jolting about so. When the team became frightened, the heads of the horses were right at the railroad, right at the first rail, just ready to step over the rail. I suppose the team became frightened by the condition of the track there, by looking down and seeing how it was between the rails. There was a handcar there. There was a lot of lumber piled up on the left-hand side of the track, and a lot on the right-hand side, and a hand car was setting on the north of the crossing on the road. I judge that this handcar was 5 or 6 feet from the middle of the road, probably. It is a fact that the planks on this railroad crossing had been removed. Yes, sir; as well as I remember, all the planks on the crossing had been removed, not those on one side only, but all the planks had been removed, and there was nothing at all there except the rails and the dirt and the ties."

In his petition appellee alleged that his horses were frightened by the handcar placed near the crossing, and by their stepping on the edges of ties and into holes between same, and that the section men were guilty of negligence in leaving the handcar so near the crossing, in tearing away the entire crossing instead of leaving a part of same undisturbed while they repaired the other part thereof, or having torn it all away, in not providing in its place a temporary way for travelers to safely cross over the track, and induce him, by assuring him that he could safely do so, to attempt to cross over the track. The answer of appellant to the petition was a denial of the truth of the allegations it contained. The appeal is from a judgment in appellee's favor for $3,000.

S. W. Marshall and Coke & Coke, all of Dallas, and Dashiell & Coon, of Terrell, for appellant. Evans & Shields and Sherrill & Starnes, all of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). The fourth paragraph of the charge to the jury, which appellant objected to before it was given in the court below, and which by the first assignment it here attacks as erroneous, was as follows:

"If you believe from the evidence that on or about April 29, 1915, while the defendant's crew was engaged in repairing the road crossing in controversy, they removed some of the planks and ballast, which render said crossing dangerous for a person with a wagon and team, and that when plaintiff approached said crossing he was unable to see from his position on his wagon the condition of the crossing between the rails, and that he asked if he could cross, and that defendant's foreman in charge of said section crew told him that he could cross, and you further believe from the evidence that by the exercise of ordinary care in the prosecution of the work of repairing said crossing the defendant's employés could have left a portion thereof intact, or left a comparatively safe way for the use of the public in passing over said crossing while said work was going on, and they failed to do so, and that such failure, if any, was negligence on the part of said employés, or that the foreman was negligent in telling the plaintiff that he could drive across, if he did, and that such negligence, if any, in either respect was the proximate cause of the plaintiff's injuries, if any, and if you further find from the evidence that the plaintiff did undertake to drive over said crossing, and in doing so his team became frightened and he was injured as alleged in his petition, you will find for the plaintiff and assess his damages according to the rule hereinafter given you."

The objection in the court below was to the part of the instruction "with reference to the plaintiff's team becoming frightened," and the ground of the objection was that "it imposed a greater responsibility on the defendant for the fright of the team than the law does." The contention here is that said part of the instruction was erroneous, in that it "failed to restrict the liability of defendant for the fright of the team to the negligence of the defendant." It will be noted that the complaint in the court below was that the instruction contained something it should have omitted, while the complaint here is that it omitted something it should have contained; in other words, the complaint in the trial court was that the instruction was affirmatively erroneous, while the complaint here is that it was negatively so.

[1] If the instruction was only negatively erroneous, in that something it should have contained was omitted from it, appellant should, of course, have directed the attention of the trial court to the omission by requesting a special charge supplying it. Whether the instruction was so erroneous or not need not be determined, for appellant did not object to it on that ground, and therefore is in the attitude of having waived its right to do so. Articles 1971 and 2061, Vernon's Statutes.

[2] That the instruction was not affirmatively erroneous we think is clear. It did not tell the jury that appellant was liable for consequences to appellee of fright of the horses not caused by its negligence, and there was no testimony tending to show that the fright of the horses was due to some-

thing appellant was not responsible for. In saying this, we are not to be understood as intimating that it would have been error, had there been such testimony, for the court to have told the jury to find for appellee if they believed a proximate cause of the injury to him was negligence as charged on the part of appellant, notwithstanding they also believed that fright of the horses not caused by appellant's negligence was a concurring cause of such injury. If the record presented such a question, probably it should be answerd to the contrary of appellant's contention. Railway Co. v. Gillenwater, 146 S. W. 590.

[3] The assignment attacking the verdict as excessive must be overruled. Appellee was 45 years old at the time he was injured. He testified to injuries to his back, to one of his kidneys, and to both of his legs, resulting in piles and in suffering and a greatly decreased capacity to labor from the time he was injured to the time of the trial, more than a year afterwards. The jury had a right to believe his testimony as to the nature and consequences to him of the injuries he suffered. If those injuries were as serious as he testified they were, we think the verdict was not excessive. If they were as serious as his physician, Dr. Hanchey, testified they were, certainly it was not excessive, for he testified that appellee, among other things, was suffering from Bright's disease as a consequence of the injuries, and would "not live but a few years at the best, even if he has the best treatment."

The judgment is affirmed.