**BENSON et al. v. GREGSTON et al. (No. 8367.)**

(Court of Civil Appeals of Texas. Galveston. May 29, 1923. Rehearing Denied June 21, 1923.)

1. **Appeal and error** ⬤⟹499(4)—**Assignments as to charge cannot be considered where no objections thereto before submission to jury.**

Assignments to the charge of the court cannot be considered, where the record does not show that appellant presented any objections thereto before it was submitted to the jury as provided by Vernon's Sayles' Ann. Civ. St. 1914, art. 1971.

2. **Appeal and error** ⬤⟹230—**Submission of special issues will not be considered unless objections thereto made before submission to jury.**

The rule that errors as to the charge to the jury will not be considered unless objection thereto has been made before submission to the jury as provided in Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, applies as well

when a cause is submitted on special issues as when submitted by a general charge.

**3. Cancellation of instruments ⬯51—Request to charge that threats whereby note and mortgage were secured could not be considered held· properly refused.**

In a suit to set aside a conveyance and mortgage alleged to have been procured by fraud and threats, it was not error to refuse to instruct that the jury could not consider any evidence with reference to threats; the question as to execution of notes and deed of trust by threats being raised by the pleadings and evidence.

**4. Witnesses ⬯317(3)—No impeachment by showing falsity of immaterial answers.**

A witness cannot be impeached by showing that his answers to questions immaterial to the issue involved were untrue.

**5. Appeal and error ⬯692(1)—Where answers to impeaching questions do not appear, error cannot be predicated upon such questions.**

Where certain questions were asked of witnesses in order to impeach plaintiff and it did not appear what the answers would have been had witnesses been permitted to answer, no error could be predicated upon the questions propounded.

**6. Appeal and error ⬯1048(5)—No error in asking impeaching questions where answers had no impeaching tendency.**

Where it was sought to impeach plaintiff in a suit to cancel a note and mortgage by showing by other witnesses that she had certain transactions with witnesses which she denied, error in asking the impeaching questions could not be predicated, where the answers in fact failed to impeach.

**7. Cancellation of instruments ⬯47—Recovery of rental value held authorized by the evidence.**

In a suit to cancel a deed and mortgage, a recovery as for rent *held* authorized by evidence as to the number of acres involved and of defendants' possession.

**8. Appeal and error ⬯1009(2)—Judgment will not be disturbed where sustained by substantial evidence.**

Where there is substantial evidence tending to establish the allegations of plaintiff in a suit to cancel a deed and mortgage, the appellate court will not disturb the judgment.

Appeal from District Court, Houston County; Chas. E. Ashe, Judge.

Suit by Maggie Gregston and others against E. L. Benson and others. Decree for complainants, and defendants appeal. Affirmed.

A. R. & W. P. Hamblen, of Houston, for appellants.

Taliaferro & Sonfield, of Houston, for appellees.

LANE, J. This suit was brought by appellee Maggie Gregston, formerly Maggie Whiteside, and her husband, Ben Gregston, against E. L. Benson, Meyer Wagner, Abe Wagner, F. E. Jones, and Jacob Widmer, praying for the cancellation of a certain deed executed by appellee prior to her marriage with Ben Gregston, by which she conveyed to E. L. Benson blocks 7, 8, and 17 in Orchard Ridge addition to the town of Almeda, in Harris county, Tex.; to cancel a certain mortgage executed by Maggie Gregston to W. P. Hamblen, trustee, for the use of Jacob Widmer and to recover rents for said land.

The plaintiffs alleged that on the 29th day of April, 1918, Maggie Gregston, then Maggie Whiteside, purchased from the defendant F. E. Jones the land hereinbefore described; that in payment for said land she paid $650 cash and assumed the payment of one certain note for the sum of $1,000, executed and delivered by one H. T. Guild, a former owner of said land, to one Rosa Kershaw, his vendor, in part payment for the same, said note being dated April 30, 1917, and payable to Rosa Kershaw ten years after date; bearing interest at the rate of 6 per cent. per annum from its date, interest payable semiannually; that the interest on said note had been paid to the 30th day of April, 1918, at the time plaintiff assumed payment of same. They alleged that the deed from her to E. L. Benson was obtained by the defendant E. L. Benson by means of false and fraudulent representations made by him to Maggie Gregston and by means of threats, duress, and coercion, in this: (1) Maggie Gregston had purchased two mules from one John Hopkins in June, 1918, and in part payment therefor had executed and delivered to said Hopkins her certain notes secured by a mortgage on said mules; (2) the interest on the $1,000 note assumed by Maggie Gregston for the year 1918 to 1919 would be due and payable on the 30th day of April, 1919, and Maggie Gregston being an ignorant negro woman, did not know who the owner and holder of said note was so that she might pay said interest; (3) E. L. Benson being anxious to become the owner of the land owned by Maggie Gregston upon which the $1,000 note was a lien, had many times unsuccessfully tried to trade Maggie other property therefor; (4) after having failed to induce Maggie to trade him said land, E. L. Benson, scheming to get possession thereof, purchased the note executed by Maggie to Hopkins and after such purchase, for the purpose of inducing Maggie to give him a mortgage on her land, set up a false claim that the mules were getting poor and threatened to foreclose his mortgage on said mules; (5) that by reason of this threat George Whiteside, a son of Maggie, was induced to execute a second mortgage on a certain automobile owned by

him on which he owed $50, which was secured by a mortgage on said automobile, to further secure said mule note; (6) that after the execution of said mortgage by George Whiteside in furtherance of his scheme to get possession of said land, E. L. Benson falsely represented to Maggie and her said son, George, that by executing a second mortgage on said automobile George had committed an offense punishable by confinement in the state penitentiary, and that unless she (Maggie) would execute her note to him covering the mule note and some other debt owing to him by her or her son, and secure the same by a mortgage on her land, he would prosecute George and send him to the penitentiary; (7) that E. L. Benson, without any intention so to do, promised Maggie that if she would execute the note and mortgage above mentioned, he would pay the interest on the $1,000 note to April 30, 1919; (8) that Maggie Gregston believing the representations so made by Benson, believing that he would carry out his threat to prosecute George, and believing that he would perform his promise to pay the interest on said $1,-000 note, executed to Benson her note as demanded by him for the sum of $321.35 to cover said mule note, and certain other items including the interest on said $1,000 note and at the same time executed a mortgage to W. P. Hamblen for the use of E. L. Benson upon her land to secure the note so executed; (9) that after E. L. Benson had obtained the last-mentioned note and mortgage, he looked up the name and the address of the owner and holder of the $1,000 vendor's lien note assumed by Maggie and after so doing falsely represented to Maggie that the interest on said note for one year was past due and unpaid, that the owner and holder of said note had declared the whole debt due, and that the lien on her land would be foreclosed on the next day and sold for said debt unless the same was paid, and that as he held a second lien on her land he would give her $280 cash, cancel indebtedness due by her to him, and pay off the $1,000 vendor's lien note if she would convey the land to him, but if she refused his offer, the land would be sold and she would receive nothing.

There were allegations of other false and fraudulent representations on the part of Benson, but we think those already stated are sufficient for an understanding of the opinion to follow. The plaintiffs alleged further that Maggie and her son, George, were ignorant and did not know that the representations made by Benson were untrue; that they believed them to be true; that they believed that unless Maggie executed said $321.35 note and mortgage to secure same Benson would have the son prosecuted as he had threatened to do; that they believed Benson's statement that he had the lien pa-

pers securing the $1,000 and that unless Maggie agreed to sell her land to him, the lien on the land would be foreclosed, the land taken from her, and that she would receive nothing; that by reason of such false representations, promises and threats, she was induced and, under duress, coerced and forced by E. L. Benson to execute to him the deed conveying to him her land which she now seeks to have canceled.

Defendants Meyer Wagner, Abe Wagner, and F. E. Jones answered by disclaimers of any interest in the land involved and were dismissed from the suit.

Defendant Jacob Widmer answered by general demurrer, general denial, and specially alleging that he held a lien against said land for $1,000. He prayed for his discharge and for all costs incurred by him.

Defendant E. L. Benson answered by general demurrer, general denial, and by plea of not guilty.

The cause was tried before a jury. Before propounding certain special issues to the jury, the trial court gave the following instructions:

"'Duress' is any force exerted upon one's will, either by word, act, or deed which deprives the contracting party of his free will in making or refusing to make a contract.

"'Fraud' is defined to be any act, omission, or concealment which involves a breach of legal duty, trust, or confidence justly reposed and is injurious to another, or by which an undue and unconscionable advantage is taken of another.

"Bearing in mind the above, the following special issues are submitted to you."

In answer to the questions propounded the jury found:

First. Maggie Gregston was induced to execute and deliver to E. L. Benson her note for the sum of $321.25, dated September 4, 1918, and to secure the same by a deed of trust on the land in controversy in this suit by reason of threats, duress, and fraud as alleged in plaintiffs' petition.

Second. E. L. Benson did, at the time of the execution by Maggie Gregston of the note for $321.25, secured by a deed of trust on said land, promise Maggie Gregston that he would pay the interest on the $1,000 note assumed by her in part payment for the land in controversy in this suit, for a period of one year.

Third. E. L. Benson made the promise to pay said interest on said $1,000 note without any present intention of making such payment and that such promise was made by E. L. Benson to Maggie Gregston as a part of a scheme to obtain possession of the land in controversy as alleged by plaintiffs.

Fourth. Maggie Gregston did, in good faith, believe that Benson would carry out his promise to pay said interest on said $1,-000 note, and relying on said promise she trusted him to make such payment.

Fifth. E. L. Benson, before Maggie Gregston executed the deed conveying to him the land in controversy, did represent to said Maggie Gregston that the owner and holder of the $1,000 vendor's lien note which was secured by a mortgage on said land was going to foreclose her lien the next day and sell said land and that she Maggie Gregston would, thereby, lose said land unless the same was conveyed to him, and that such representations were made for the purpose of securing the execution of said deed, and that such representations and statements were, within the knowledge of said E. L. Benson, untrue.

Sixth. Maggie Gregston did believe such representations and statements to be true.

Seventh. E. L. Benson did make the representations inquired about in the foregoing questions for the purpose of inducing the plaintiff Maggie Gregston to execute to him a deed to the land in controversy.

Eighth. Maggie Gregston would not have executed said deed had said representations by Benson not been made.

Ninth. The reasonable market value of the land in controversy, at the time of the execution of said deed by Maggie Gregston to E. L. Benson, was $1,000 per acre.

Tenth. The reasonable rental value of the property involved in the suit per year per acre from the 9th day of April, 1919, to date was $5 per acre.

Upon the findings of the jury and the findings of the court judgment was rendered in which it is recited substantially that Maggie Gregston by her deed of date April 9, 1919, conveyed the land in controversy to E. L. Benson; that the consideration for said conveyance was the assumption by defendant E. L. Benson of one certain note in the sum of $1,000, dated April 30, 1917, due and payable 10 years after its date, bearing interest at the rate of 6 per cent. per annum from date payable semiannually, executed by H. T. Guild and payable to the order of Rosa L. Kershaw, and the further cash consideration of $280, which said cash consideration was paid to plaintiff Maggie Gregston by defendant E. L. Benson, upon the execution of said general warranty deed, and which said sum of $280 has been duly tendered by plaintiff Maggie Gregston to defendant E. L. Benson, and is now held in the registry of this court as a tender to defendant E. L. Benson; that at the time of such conveyance, E. L. Benson was the owner and holder of the following described three notes: (a) A note for $25 dated January 28, 1919, executed by Maggie to Abe Wagner and payable 30 days after date. (b) A note for $62.50 dated January 28, 1919, executed by Maggie and payable to E. L. Benson on the 27th day of July, 1919. (c) A note for $321.25 dated September 4, 1918, executed by Maggie and payable to E. L.

Benson on the 27th day of July, 1919. That all of said notes were secured by liens upon the land in controversy. (2) That, as found by the jury, at the time of the execution of the above-mentioned $321.25 note, E. L. Benson agreed and promised Maggie that he would pay the interest for the period of one year, from the 30th day of April, 1918 to April 30, 1919, on the $1,000 vendor's lien note which Maggie had assumed in part payment for said land, which said interest amounted to $60, and which said sum was included in the said note for $321.35; but that said $60 was not paid by Benson, and therefore said sum should be deducted from said note, leaving the principal sum of said note to be $261.35. (3) That E. L. Benson paid the taxes due upon said land for the year 1918 amounting to $27.91, and that he also paid $34.20 in satisfaction and discharge of a certain judgment against Maggie Gregston. (4) That Maggie is entitled to the sum of $430 as rents for said land. (5) That Jacob Widmer in good faith advanced to defendant E. L. Benson the sum of $1,000, which was secured by a deed of trust upon the land in controversy, dated May 6, 1919.

After making such recitals, the judgment proceeds as follows:

"It is therefore ordered, adjudged, and decreed that the motion duly made and filed by plaintiff Maggie Gregston, on the 21st day of March, A. D. 1922, that judgment be entered in conformity with the verdict of the jury rendered herein in her favor, which said motion was duly submitted and heard by the court be granted, and that plaintiff Maggie Gregston do have and recover of and from defendant E. L. Benson the title and possession to the said land and premises more particularly described as follows:

"'Blocks Nos. 7, 8, 9 and 17, containing forty-three (43) acres, or more, in Orchard Ridge addition to the town of Almeda, in Harris county, Texas, according to the plat of said town recorded in volume 64, page 7, of the Deed Records of Harris county, Texas, said land being out of the R. T. Blackburn survey, subdivision No. 3072, and being the same property described in a deed from L. Redding to F. E. Jones, and being the same property conveyed by Maggie Gregston, under her then name of Maggie Whiteside, to E. L. Benson, on the 9th day of April, A. D. 1919, which said deed is recorded in volume 413, page 477, of the Deed Records of Harris county, Texas.'

"It is further ordered, adjudged, and decreed that certain general warranty deed, executed by plaintiff Maggie Gregston, under her then name of Maggie Whiteside, to defendant E. L. Benson, on the 9th day of April, A. D. 1919, and recorded in volume 413, page 477, of the Deed Records of Harris county, Texas, conveying the land and premises above described, be set aside, canceled of record, declared null and void, and of no force and effect, and that the title to said land and premises be divested out of defendant E. L. Benson, and reinvested in plaintiff Maggie Gregston, for which she shall have her writ of possession.

"It is further ordered, adjudged, and decreed

that plaintiff Maggie Gregston have and recover of and from defendant E. L. Benson the sum of $430, together with interest thereon at the rate of 6 per cent. per annum from the date of this judgment; for which execution shall issue.

"It is further ordered, adjudged, and decreed that plaintiff Maggie Gregston pay to defendant E. L. Benson the sum of $25, the sum of $62.50, and the sum of $261.35, the payment of all of which said sums is secured by deeds of trust upon the land and premises involved in this suit, together with interest thereon as specified in the respective deeds of trust; for the payment of which said sums said defendant E. L. Benson shall have and retain his lien and charge on these said lands and premises, and in addition thereto that plaintiff Maggie Gregston pay to defendant E. L. Benson the sum of $60, together with interest thereon at the rate of 6 per cent. per annum from the 6th day of May, A. D. 1919, the sum of $27.91 together with interest thereon at the rate of 6 per cent. per annum from the 3d day of September, A. D. 1919, and the sum of $34.20, together with interest thereon at the rate of 6 per cent. per annum from the 31st day of March, A. D. 1919, for which he shall have and retain his lien and charge against this said property.

"It is further ordered, adjudged, and decreed that the sum of $280 which has been tendered by plaintiff Maggie Gregston to defendant E. L. Benson, and is now held in the registry of this court, be forthwith paid to defendant E. L. Benson.

"It is further ordered, adjudged, and decreed that plaintiff Maggie Gregston take nothing as against defendant Jacob Widmer.

"It is further ordered, adjudged, and decreed that the only liens or incumbrances which are outstanding on this said land and premises in favor of either defendant E. L. Benson or defendant Jacob Widmer are those specifically set forth and described in this decree.

"It is further ordered, adjudged, and decreed that all costs in this suit be taxed against the defendant E. L. Benson, for the collection of which execution may issue, except those incurred by making defendant Jacob Widmer a party, which said costs are taxed against plaintiff Maggie Gregston, for which execution may issue.

"It is further ordered, adjudged, and decreed that plaintiff Maggie Gregston take nothing as against defendants Meyer Wagner, Abe Wagner, and F. E. Jones, and that costs of making them parties be taxed against plaintiff Maggie Gregston, for which execution may issue."

From the judgment so rendered E. L. Benson alone has appealed.

Appellees have filed their motion to strike appellants' brief upon the grounds that appellants' assignments of error are neither set out in numerical order at the back of the brief, nor immediately following the statement of the case as is required by rule 32 for the Courts of Civil Appeals, promulgated in June, 1921; nor are the propositions as points upon which the appeal is predicated set forth consecutively, separately, or numerically as provided by rule 30 for the Courts of Civil Appeals (142 S. W. xiii).

We would be justified in sustaining the motion, as the brief offends in all the particulars pointed out; but in view of the fact that this court has, from time to time, refrained from strictly enforcing the rules, partly for the reason there has prevailed a general misunderstanding or misconstruction of the new rules, and in view of the disposition we shall make of the appeal, we have concluded to refuse the motion of appellee, and it is so ordered.

By assignments Nos. 1 to 9, inclusive, appellant insists that the trial court erred in submitting to the jury special issues Nos. 1 to 8, inclusive, the nature and import of which, we think, are sufficiently indicated by the answers of the jury thereto, which have been hereinbefore set out, to obviate the necessity of copying them here.

[1] These assignments cannot be considered. It is not shown by the record in any manner that appellant presented any objections to the charge of the court or any part thereof before the same was submitted to the jury. By article 1971, Vernon's Sayles' Civil Statutes, 1914, it is provided as follows:

"The charge shall be in writing and signed by the judge; after the evidence has been concluded the charge shall be submitted to the respective parties or their attorneys for inspection and a reasonable time given them in which to examine it and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived."

[2] It has been uniformly held since the amendment of article 1971 by the acts of the Legislature of 1913 that where the record fails to show that objections to the charge were presented before it was read to the jury as required by said article as amended, the Court of Civil Appeals need not consider the objections to the charge made in those courts. I. & G. N. Ry. v. Bartek (Tex. Com. App.) 213 S. W. 602; Stephens v. Miller (Tex. Civ. App.) 202 S. W. 1051; Midkiff v. Benson (Tex. Civ. App.) 225 S. W. 186; Payne v. Harris (Tex. Civ. App.) 228 S. W. 350; Ry. Co. v. Combs (Tex. Civ. App.) 195 S. W. 1178; Baker v. Williams (Tex. Civ. App.) 198 S. W. 808. The rule established applies as well when a cause is submitted on special issues as when submitted by a general charge.

In Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030, the Supreme Court of this state, speaking through Judge Hawkins, said:

"Said amendatory act of 1913 seems to have been intended to put a premium upon efficiency, candor, and diligence, on the part of the litigant or his attorney, in aiding the court properly to submit causes to juries, and to discourage speculation on the actions of juries; and all reasons of public policy impelling such leg-

islative action seem to us of equal force as applied to the two methods of submitting causes. We cannot believe that the Legislature intended that there should be any difference in the practice under the two statutory methods of submitting causes, in so far as concerns either the time and manner of making 'objections' to the form of submission of the cause to the jury or the consequences to a litigant for failing to point out to the court, seasonably, any material error into which the court may have fallen in the preparation of its main charge to the jury.

"Accordingly, upon full and careful consideration of that issue, as here presented, we have concluded, and here now hold, that said provisions of said amended article 1971 relative to 'objections' to the charge of the jury, including the requirement concerning the time of presentation of such objection and also the provision prescribing a penalty for not making and presenting it to the court before the charge is read to the jury, are applicable as well when a cause is submitted to the jury 'on special issues' as when the cause is submitted to the jury by an ordinary charge presenting the general issue."

Although we are not called upon to consider said assignments 1 to 9, we have, after a careful examination of the entire record and the statement of facts, reached the conclusion that none of them should be sustained. Appellee Maggie Gregston alleged substantially that appellant, scheming to defraud her out of her land, did by false and fraudulent representations and promises and by threats procure from her liens upon her land, and that he did by further false promises and representations procure the deed which she seeks by this suit to cancel. We think the charge complained of was a fair submission of the issues involved as made by the pleading and raised by the evidence.

[3] By special charge presented to the court, appellant sought to have the court instruct the jury not to consider any evidence with reference to threats made by appellant to procure the note for $321.35 and the lien upon appellee's land to secure said note. This charge was refused, and appellant makes such refusal the grounds for his tenth assignment of error.

We do not think the court erred in refusing the charge. The questions as to whether appellant procured the execution of the note and the deed of trust on the land by means of threats, and as to whether such threats were made in furtherance of the alleged scheme to get possession of appellee's land, were raised by the pleading and the evidence and were properly submitted by special issue No. 1 of the court's charge.

By assignments 11 to 18, inclusive, complaint is made that the court erred in refusing to give to the jury a number of special charges requested by appellant. We overrule these assignments. We think the court, in its main charge, fully and fairly submitted to the jury all the material issues involved in

253 S.W.—44

the case as made by the pleading and the evidence, and hence the refusal of the special requested charges was not error.

By assignments 20, 21, and 22 it is insisted that the court erred in sustaining appellee's objection to the question asked Theo. G. Britton, L. E. Norton, and W. G. Fraser, respectively, as follows:

(1) "Was the property in controversy offered to you for sale, and if so, when and where?" (2) "Did you ever talk to George Whiteside with reference to the sale of this property, and did said George Whiteside offer said property to you?" (3) "Is it not a fact that after George Whiteside submitted this land to you for sale that you visited the land in controversy with a view of buying the same?"

The proposition under these assignments is as follows:

"When proper predicate is laid to impeach or contradict the testimony of a witness, it is permissible to do so."

Appellant contends that the answers sought by the questions propounded were admissible to contradict and impeach the testimony of Maggie Gregston and George Whiteside, respectively, as follows:

"'I never saw Sutton Green at any time about acting as my agent to sell this land. Neither was my son George Whiteside ever authorized by me to offer this land for sale. I don't know Mr. T. L. Britton personally, nor do I know him by sight—I don't think I do. He did not come to my house in the early part of 1919 and talk with me about this land. I swear to that. I did not offer this land for sale to Mr. Britton. I never did offer it for sale to no man. I did not offer it for sale to Mr. Theo. G. Britton. I never offered it to Mr. Meyer C. Wagner. As I said, I never offered it for sale to anyone. I never offered it for sale to Mr. W. G. Fraser or to Mr. L. E. Norton. I never put this property in the hands of Sutton Green for sale, neither did I try to get John Hopkins to make sale of it.'

"'My mother did not offer this property for sale to anybody, and neither did I. I did not have a right to offer it for sale. I did not go to Mr. Fraser's office in company with Sutton Green and offer him this property for sale. Neither did I go to Mr. T. L. Britton and Mr. Theo. Britton and offer it for sale, etc. I did not go to Mr. L. E. Norton and offer this property for sale. I didn't offer it to any of these people.'"

We overrule all of said assignments for the following reasons:

[4] (1) Whether Maggie Gregston tried to sell her land to parties other than appellant was not a material inquiry. A witness cannot be impeached by showing that his or her answers to questions immaterial to the issue involved were untrue.

[5] (2) It is not shown by appellant in any manner what the answers of the witnesses would have been had they been permitted to answer the questions propounded.

[6] (3) It is apparent that answers of the

witnesses Norton and Fraser, responsive to the questions propounded, would have no tendency to impeach the testimony of Maggie Gregston above set out.

(4) It is shown that the witness Theo. G. Britton was permitted to testify, and that he did testify, that he did not know Maggie Gregston; that the witness L. E. Norton did testify that he knew Maggie Gregston and that he had no talk with her relative to the property in controversy; and that the witness W. G. Fraser did testify that he knew Maggie Gregston and that he never did talk to her about the land in controversy.

By the twenty-third assignment it is insisted that the court erred in rendering judgment against appellant for $430 as rent, because there was no proof that appellant was in possession of the land, and there was no proof of the number of acres involved.

[7] There is no merit in this assignment. The conveyance from Maggie Gregston to appellant passed constructive possession, and the evidence shows that appellant had been asserting title and possession at all times since such conveyance was executed.

W. R. Allison testified that he knew the land in controversy and it contained 43 acres. H. T. Guild testified that he at one time owned said land and that his recollection was that there were 43 acres of it.

The effect of the eighteenth assignment is that there was no sufficient evidence to sustain the judgment canceling the deed from Gregston to Benson. Appellants' contention is that to justify a cancellation of a deed upon allegation of fraudulent procurement, the evidence of such fraud must be clear and satisfactory, and that the evidence in the present case was not clear and satisfactory.

[8] We think the evidence was sufficient to support the verdict of the jury and the judgment, and we are therefore not at liberty to reverse the judgment upon the grounds that the evidence was not satisfactory to us, or, in other words, that if the matter had been submitted to us upon the evidence adduced we would have rendered a different verdict. If there was substantial evidence tending to establish the allegations of the plaintiff, and we think there was, we are not authorized to interfere with the verdict of the jury and the judgment based thereon.

The judgment is affirmed.

Affirmed.